UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:14 CR 00028 RL-PRC |
| v. | ) | |
| | ) | |
| EDWIN TOLLINCHI-RODRIGUEZ | ) | |

**GOVERNMENT SENTENCING MEMORANDUM**

Defendant Edwin Tollinchi-Rodriguez stands before this Honorable Court for sentencing after admitting that, on November 3, 2012, he knowingly transported an 11 year-old minor child (identified in this case as "Jane Doe") in interstate commerce, i.e., from the State of Indiana to the State of Illinois, with intent that she engage in sexual activity that is prohibited by Illinois law, i.e., Criminal Sexual Assault under Illinois law, 720 ILCS 5/11-1.60(c)(1)(i), in violation of 18 U.S.C. § 2423(a).  *See* DE # 2 (Plea Agreement), para. 9.

Defendant further admitted that prior to transporting Jane Doe in interstate commerce on November 3, 2012, he told her that his stomach was hurting and that he needed her to accompany him to a hospital so she could translate from English to Spanish and from Spanish to English on his behalf. *Id.* Rather than drive Jane Doe to a hospital, however, he drove her to several hotels until he was able to find an available room at the Howard

1

Johnson Hotel located at 17301 Oak Avenue in Lansing, Illinois. After telling Jane Doe to wait in the car, he checked in and paid for room # 235. *Id.* He then returned to the car and escorted Jane Doe to room # 235. When his keycard did not work, he returned Jane Doe to the car and went back to the front desk. *Id.* With a new key in hand, Defendant returned to the car to get Jane Doe and again escorted her to room # 235. *Id.* Once inside the room, Defendant made Jane Doe lay on the bed and he took off her pants and her underwear. *Id.* Defendant removed his pants and underwear as well. He then touched Jane Doe's genitals with his hand, his penis and with his mouth and attempted to penetrate her vagina. *Id.* Defendant masturbated in front of Jane Doe and ejaculated onto the hotel room bed. At the time, Jane Doe was under his custody, care or supervisory control.

The Presentence Report prepared in this case provides a detailed account of the nature and circumstances of Defendant's offense and relevant conduct. *See* DE # 54. According to Jane Doe, Defendant's sexual abuse did not begin on November 3, 2012. Rather, it began when Jane Doe was approximately 8 years old. *Id.*, para. 40. According to Jane Doe, the first time Defendant sexually abused her, he warned her that if she ever told anyone what he had done he would kill her and her family. *Id.* Thereafter,

2

Defendant would go into Jane Doe's room and molest her early in the morning after Jane Doe's mother had left for work. *Id.* Along with the sexual abuse Jane Doe endured physical abuse at Defendant's hands. According to Jane Doe, when he was sexually abusing her Defendant would place his hands over her mouth so she couldn't scream, he would choke her neck with his hands, and he would punch her in her face, arms and stomach when she did not cooperate with his directions. *Id.*

Federal law requires that Defendant receive a minimum sentence of 10 years' incarceration and a maximum sentence of life in prison on the count to which he pled guilty. 18 U.S.C. § 2423(a). Defendant was arrested on the day Jane Doe disclosed the abuse and was subsequently indicted for Aggravated Sexual Abuse of a Minor in violation of 18 U.S.C. § 2241(c). The indicted offense carried a statutory mandatory minimum sentence of 30 years and a maximum sentence of life. The government agreed to drop that charge in exchange for Defendant's guilty plea to a violation of 18 U.S.C. § 2423(a). *Compare* 2:12 CR 164 (charging Defendant with a violation of § 2241(c)) *with* DE # 2 (Plea Agreement), para. 7(c) ("In exchange for my guilty plea to the charge of transporting a minor in interstate commerce with intent to engage in criminal sexual activity in Count 1 of the Information filed herewith, the

3

United States of America agrees to move to dismiss the Aggravated Sexual Abuse of a Minor charge under 18 U.S.C. § 2241(c) which is currently pending against me in case number 2:12 CR 164 in this judicial district.").

Not surprisingly given the harsh statutory penalties envisioned by Congress for both of the offenses with which he has been charged, the U.S. Sentencing Commission's guidelines (hereafter "the Guidelines"), as applied by Probation, recommend that Defendant be ordered to spend the rest of his life in prison. *See* DE # 54, para. 60. The Guidelines arrive at that recommendation after adding the following applicable enhancements to Defendant's base offense level under § 2A3.1:

- Four levels are added § 2A3.1(b)(1) because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b) (i.e., the use of force or threats of force);

- Four levels are added under § 2A3.1(b)(2)(A) because the victim was under the age of twelve (12) when the offense occurred;

- Two levels are added under § 2A3.1(b)(3)(A) because the victim was in Defendant's custody, care or supervisory control at the time the offense occurred;

- Four levels are added under § 2A3.1(b)(5) because the victim was "abducted" (i.e., inveigled, deceived or tricked per *United States v. Beith*, 407 F.3d 881 (7th Cir. 2005)) during Defendant's commission of the offense; and, last but not least,

- Five levels are added pursuant to § 4B1.1 because Defendant engaged in a pattern of activity involving prohibited sexual

4

conduct with Jane Doe.

Defendant admitted to application of the first four of the above enhancements in his plea agreement with the government.  *See* DE # 2 (Plea Agreement), para. 8(e) through 8(h).  The final enhancement is based on Jane Doe's account of the duration of the abuse, which Defendant denies.

Defendant has objected to Probation's calculation of his criminal history under § 4A1.1(d) on the basis that he committed part of the offense while under a Criminal Justice Sentence.  The government's response to that objection is set forth in the PSR Addendum, DE # 55, and will not be reiterated here.  Regardless of the Court's ruling on that objection, even with full credit for acceptance of responsibility Defendant scores out under the Guidelines at Life.

Defendant has not yet filed a sentencing memorandum with the Court. Instead, his counsel has informed government counsel that he intends to move this Court for yet another continuance of the sentencing hearing.  If granted, such a motion would constitute Defendant's **_seventh_** successful attempt to delay his sentencing hearing in this case **_since pleading guilty_**.  *See* DE # 17, 19, 21, 27, 29, 41 and 42.  According to defense counsel, the continuance is needed to provide him with additional time to meet with Defendant so he can

5

file a motion to withdraw Defendant's guilty plea. Defendant seeks to withdraw his plea on the ground that his prior defense counsel, Mr. Sam Scheele, provided ineffective assistance of counsel by not explaining to Defendant that he faced a maximum possible sentence of life in prison if convicted under 18 U.S.C. § 2423(a).

As explained below, the government believes any such claim would be frivolous and therefore urges the Court not to allow Defendant to drag out these proceedings further simply to prepare and file a frivolous motion.

A defendant does not have an absolute right to withdraw his guilty plea before sentencing. *See United States v. Bowlin*, 534 F.3d 654, 659 (7th Cir. Ill. 2008). He may be allowed to do so only upon providing a "fair and just reason." *Id*. (quoting FED. R. CRIM. P. 11(d)(2)(B)). The appellate standard of review for a denial of a motion to withdraw is the abuse of discretion standard. *Bowlin*, 534 F.3d at 559. Further, the factual findings of a district court on whether a defendant has demonstrated a fair and just reason for withdrawal of his plea are reviewed for clear error. *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). The Seventh Circuit has "cautioned that a defendant seeking to withdraw a guilty plea faces an uphill battle after a thorough Rule 11 colloquy has already occurred." *Id*. at

6

559-560 (internal quotations and citations omitted).

In order to establish a viable claim of ineffective assistance of counsel, Defendant must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "A failure to establish either [*Strickland* prong] results in denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002).

To show that an attorney's performance fell below an objective standard of reasonableness, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id* at 687. "This test is 'highly deferential' to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2006) (quoting *United States v. Scanga*, 225 F.3d 780, 783-84 (7th Cir. 2000)). Further, given that Defendant pled guilty, he must establish that his plea was rendered involuntary by counsel's deficient performance and that were it not for his counsel's objectively unreasonable performance, he would not have pleaded guilty. *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir.

7

2000).

The record contradicts Defendant's claim that Mr. Scheele failed to inform him about the maximum sentence he faced if convicted. The plea agreement Defendant and Mr. Scheele signed made clear that Defendant would face up to life in prison on the crime charged. DE # 2, para. 7(b). In the plea, Defendant confirmed: "My lawyer has explained fully each paragraph of this plea agreement to me, through the use of an interpreter." *Id.*, para. 1. He also stated: "I believe and feel that my lawyer has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in this case against me." *Id.*, para. 10. Defendant was asked at his change of plea hearing if he was satisfied with the services of his lawyer and if he had enough time to discuss the plea agreement with Mr. Scheele, and he answered affirmatively. DE # 49, p. 12:13-22.

Further, during the change of plea hearing, Mr. Scheele himself informed Defendant that he faced a statutory mandatory minimum term of incarceration of ten years and a maximum of life in prison. *Id.*, p. 24:24-25:25. In response to questioning by Mr. Scheele, Defendant confirmed that he understood his sentence could be "anywhere between ten years and life" and that he understood that ultimately it would be this Court who would

8

be the one to decide his sentence. *Id.* Defendant was likewise ***thrice*** warned by government counsel and Judge Cherry during the same hearing that the offense to which he was pleading guilty carries a maximum sentence of up to life in prison. DE # 49, pp. 6:2-20, 19:9-20:6, and also 26:23-25 and 34:14-15. Defendant was asked repeatedly if he understood the penalties he faced and each time he stated he did. *Id.*

This Court may treat statements made by a defendant at his change of plea hearing as conclusive when considering a motion to withdraw a guilty plea. *United States. v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). "Self-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing – the latter are presumed true." *United States v. Ramirez*, 2010 U.S. Dist. LEXIS 9841 (N.D. Ind. Feb. 3, 2010) (quoting *United States v. Mosley*, 35 F.3d 569, 1994 WL 503016, at *3 (7th Cir. Sept. 14, 1994)). The "whole point of the plea proceeding (the Rule 11 colloquy) is to establish that the plea was knowingly and voluntarily made[.]" *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987); *see also United States v. White*, 597 F.3d 863, 868 (7th Cir. 2010) (stating that "[v]oluntary responses made by a defendant under oath before an examining judge . . . are binding"). "[A] careful plea

9

colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary." *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002).

For all these reasons, Defendant's attempt withdraw his guilty plea is doomed to fail.

The government intends to call Jane Doe to testify at the upcoming hearing to prove up application of the enhancements discussed herein. Jane Doe has been waiting for her day in court since November 2012 – for nearly three full years. Federal law guarantees victims the right "to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7). A delay sought in order to file a frivolous motion is not reasonable given how long this case has been pending and the ***six*** prior continuances Defendant has been granted. Enough is enough. It is time for Defendant to face this Court and be punished for his crime.

In deciding Defendant's sentence, the Court is directed to consider the nature and circumstances of Defendant's offense conduct and the seriousness of his crime, among other factors. 18 U.S.C. § 3553(a). Defendant took advantage of the trust placed in him by an 11 year-old child and by her mother in committing this crime. At the time, the child was in Defendant's custody, care and supervisory control.

Sexually abusing a child under the age of 12 is a heinous crime deserving of strong punishment.  That is especially true where, as here, force is used and the child is inveigled and tricked into traveling across state lines with the Defendant.  Defendant threatened to kill the child and her family if she told anyone about the abuse.  But most disturbingly is the fact that Defendant began abusing Jane Doe when she was just 8 years old and he continued to do so, over and over again, until the day she risked her own life and the lives of her family members by telling another adult what was happening.

When first confronted with the allegation of abuse, Defendant flatly denied it.  There is no doubt he would have continued denying it were it not for the FBI's quick accumulation of damning evidence supporting the victim's account.  Surveillance video from the Illinois hotel where Defendant took the victim shows him checking in and obtaining a room key and then excitedly walking the victim to the room where he would sexually abuse her.  He's so excited, in fact, that at one point he is seen in the footage playing "air drums" and smiling while walking to the hotel room.  Defendant ushers Jane Doe into the room and closes the door.  His semen was later recovered from the hotel room bedding still intact due to the FBI's quick action of preserving the

evidence the day Jane Doe disclosed.

These same facts weigh in favor of a lengthy sentence to promote respect for the law and just punishment for the offenses, to afford adequate deterrence to future criminal conduct of this nature, and to protect the public from further crimes of Defendant.   18 U.S.C. § 3553(a).

## CONCLUSION

WHEREFORE, for the reasons explained herein and in Probation's Presentence Report, the government respectfully asserts that the only sentence sufficient but not greater than necessary to adequately address the factors set forth in 18 U.S.C. § 3553(a) is a within-Guideline term of incarceration (life or its equivalent), followed by a 20-year term of supervised release.

    Respectfully submitted,

    DAVID CAPP
    United States Attorney

By:   */ S /   Jill Rochelle Koster*
    JILL ROCHELLE KOSTER
    Assistant United States Attorney
    5400 Federal Plaza, Suite 1500
    Hammond, Indiana 46320
    (219) 937-5500

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to defense counsel of record.

By: */ S /   Jill Rochelle Koster*
JILL ROCHELLE KOSTER
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500